(No. 82-CC-2483-)

COMMUNITY COLLEGE DISTRICT 526, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed January 9, 1989.*

ENSEL, JONES, BLANCHARD & LABARRE (ALFRED LABARRE, of counsel), for Claimant.

NEIL F. HARTIGAN, Attorney General (MICHAEL TAYLOR, Assistant Attorney General, of counsel), for Respondent.

RAUCCI, J.

On February 10, 1972, the Illinois Building Authority, hereinafter referred to as IBA, contracted with Carney General Contractors, Inc., hereinafter referred to as Carney, to construct the Lincoln Land Community College campus, hereinafter referred to as Lincoln Land. This contract was assigned by IBA to the Capital Development Board, hereinafter referred to as CDB, on September 22, 1972, and work began on the project.

The general contractor, Carney, breached its contract through unsatisfactory and incomplete performance and its contract was terminated in August of 1976 by the CDB. A number of lawsuits ensued, both in circuit court and the Court of Claims. One of these suits was by Carney against CDB in the Court of Claims, No. 76-CC-1622. Another suit was by the CDB against Carney in circuit court. A third was by Carney against Lincoln Land and others in circuit court. The circuit court cases involved various counterclaims and were consolidated.

Prior to trial on the merits in any of these suits, Carney and CDB reached a separate settlement agreement. As a part of that agreement, CDB retained all $99,190 of the monies it had retained from Carney's periodic payments pursuant to the retainage provision in their contract. This provision provided for a 10% retainage "to insure proper performance of this contract * * *." These funds, being a part of appropriation No. 141-511844470-4973, lapsed.

Shortly after the settlement between CDB and Carney, all the remaining cases were settled and all litigation among Carney, Lincoln Land and the architects was concluded. No monies were received by the college in any of these settlements to conclude the project or correct problems caused by Carney.

In 1980, Fitch/LaRocca Associates, Inc., the architects on the project, filed two suits against the CDB in the Court of Claims seeking recovery of unpaid architects' fees. The architects and the CDB entered into a joint stipulation and on March 25, 1982, we ordered the payment of the architects' fees from the lapsed retainage funds, thereby reducing them to $85,355.59. Subsequently, the General Assembly appropriated that amount and it was paid.

In May of 1982, Lincoln Land filed the instant claim alleging that it had spent monies toward repair and completion of the work unsatisfactorily done (or not done) by Carney and that there remained further work to be done to complete the project.

A motion for summary judgment by the CDB was denied by the Court by order entered December 30, 1985, but in the order we found that Claimant is a third-party beneficiary of the construction contract. An evidentiary hearing was held on July 3, 1986, before Commissioner Bruno Bernabei. At the hearing, the only witness to testify was John Costello, director of buildings and grounds at Lincoln Land Community College, who testified on behalf of Claimant.

Mr. Costello's testimony, which was unrefuted, was to the effect that as of July 1986, Lincoln Land had spent $94,168.43 on corrective work made necessary by Carney's breach. Costello also testified that there remained $62,836 worth of work left to be done based upon the last CDB punch list as adjusted by him to reflect corrective work completed after publication of the punch list.

Claimant seeks the remaining $85,355.59 of the appropriation as reimbursement for corrective work it had to pay for and as funds to use in completing the corrective work remaining.

Respondent does not dispute the foregoing statement of facts. What is in dispute is CDB's legal duty to use the lapsed appropriation funds to reimburse the Claimant for corrective work paid for by Claimant.

In the instant case, the CDB has refused to pay for corrective work necessitated by the defective work of the general contractor. The CDB agreed to the payment

of unpaid architects' fees out of lapsed funds, but resisted and continues to resist reimbursing Lincoln Land for the cost of said corrective work.

The position of Lincoln Land is that it seeks lapsed funds to the extent of their appropriation and that they are owed this money for either of two reasons:

1. Section 5—12 of the Public Community College Act (Ill. Rev. Stat., ch. 122, par. 105—12) charges CDB with paying for corrective work out of appropriated funds.

2. That Lincoln Land is a third-party beneficiary to the contract between CDB and the contractor wherein it was provided that the retainage held by CDB was "to insure the proper performance of this contract."

Since CDB kept the retainage, it is contractually bound to use it for the proper performance of the work, *i.e.* its completion and correction.

CDB's brief ignores the second of the above reasons and in response to the first it maintains that there is a distinction between "corrective work" and "construction." Respondent's position apparently is that the lapsed appropriation was specifically limited to original construction costs and thus cannot be utilized for corrective work.

This Court is not persuaded that said position is correct to defeat the claim. The evidence shows that CDB, itself, spent a great deal of the appropriated funds for corrective work. The CDB punch list was submitted as evidence and testimony showed that they already corrected many of the problems caused by the contractor. No evidence exists of any separate appropriation to cover this corrective work.

It is therefore clear that corrective work such as involved in the instant case is covered by this appropriation. None of the cases cited by the CDB in its brief support the contention that corrective work cannot be performed even if the appropriation bill is limited solely to construction.

The Claimant is limited to a recovery of the lapsed appropriation funds in the amount of $85,355.59.

It is therefore ordered, adjudged and decreed that the Claimant be awarded the sum of $85,355.59 in full settlement of this claim.